IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK A. MCAULIFFE,

        **Plaintiff,**

 **v.**                                                 **No. 14-cv-0025 SMV**

**CAROLYN W. COLVIN, Acting Commissioner of
Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum [Doc. 18] ("Motion"), filed on September 9, 2014. The Commissioner responded on October 30, 2014. [Doc. 19]. Plaintiff replied on November 18, 2014. [Doc. 20]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") impermissibly relied on the medical-vocational guidelines to find Plaintiff disabled at step five. Therefore, the Motion will be granted, and the case will be remanded for further proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity;" *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."   20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### Procedural Background

Plaintiff applied for supplemental security income on December 18, 2008.   Tr. 12. Plaintiff alleged a disability-onset date of November 10, 2008.  *Id*.   His claims were denied initially and on reconsideration.  *Id*.   Plaintiff requested a hearing before an ALJ.  *Id*.   On May 24, 2012, a hearing was held before ALJ Michelle K. Lindsay.  Tr. 12, 24–61.  Plaintiff

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

appeared in person with his attorney.[3]   *Id*.   The ALJ heard testimony from Plaintiff and an

impartial vocational expert ("VE"), Thomas M. LaFosse.   Tr. 12, 55−60.

The ALJ issued her unfavorable decision on August 3, 2012.   Tr. 12–19.   At step one, she

found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

Tr. 14.   Because Plaintiff had not engaged in substantial gainful activity for at least 12 months,

the ALJ proceeded to step two.   *Id*.   There, she found that Plaintiff suffered from the following

severe impairments:   "degenerative disc disease of the lumbar spine, status post lumbar fusion,

and a chronic pars defect at L5 without anterolisthesis."   *Id*.   At step three, the ALJ found that

none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.   *Id*.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess

Plaintiff's RFC.   Tr. 14–18.   The ALJ found that:

> [Plaintiff] has the [RFC] to perform a wide range of light work.
> Specifically, he can lift and/or carry 20 pounds occasionally and
> 10 pounds frequently; push and pull 20 pounds occasionally and
> 10 pounds frequently; sit six hours in an eight-hour workday; stand
> and/or walk six hours in an eight-hour workday; frequently climb
> stairs and ramps, balance, stoop, crouch, kneel, and crawl; and
> only occasionally climb ladders, ropes, and scaffolds.

*Id*.   At step four, the ALJ found that Plaintiff was unable to return to his past relevant work.

Tr. 18.   Accordingly, the ALJ proceeded to step five, where she applied the medical-vocational

guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the grids" or "grid rules").[4]   Tr. 18.   However,

---

[3] At the hearing, Plaintiff was represented by attorney Mark Hendricks.  Tr. 12, 24.  Before this Court, however, Plaintiff is represented by attorney Francesca J. MacDowell and the Michael Armstrong Law Office.
[4] "The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.  Under the Secretary's own regulations, however, the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule.  A mismatch may occur [for example] because of a particular exertional or nonexertional impairment, or a particular combination of impairments."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citations and quotation marks omitted).

the grid rules are not controlling where, as here, a plaintiff has nonexertional limitations.  *Id.*  To get around this problem, the ALJ simply determined that Plaintiff's nonexertional limitations had "very little effect on the occupational base of unskilled light work."  *Id.*  She applied grid rule 202.18, which directed a finding of not disabled.  *Id.*  Having found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, she denied the claims.  Tr. 19.  The Appeals Council denied Plaintiff's request for review on November 7, 2013.  Tr. 1–5.  Plaintiff timely filed the instant action on January 8, 2014.  [Doc. 1].

## Analysis

Plaintiff complains that the ALJ's RFC assessment was incomplete without a sit/stand option.  *See* [Doc. 20] at 6 (referring to this alleged error as the "heart" of Plaintiff's case).  Plaintiff makes several arguments that relate to this central alleged error.  However, the Court finds them unpersuasive.  Plaintiff fails to show that the ALJ applied incorrect legal standards in formulating the RFC and also fails to show that the RFC assessment is not supported by substantial evidence.  Further, Plaintiff fails to show any error in the ALJ's failure to discuss certain testimony from the VE.  However, the Court finds that the ALJ committed reversible error in applying the grid rules where Plaintiff's RFC included nonexertional limitations.  Accordingly, the Motion will be granted, and the case will be remanded.

I.       **Plaintiff fails to show any reversible error in the formulation of the RFC.**

The Court is not persuaded by Plaintiff's challenges to the RFC.  He argues that the RFC assessment was impermissibly based on the opinion of non-examining medical source, Dr. Nickerson.  He further argues that if the ALJ had properly evaluated his credibility, the RFC

assessment would have been more restrictive. Neither argument is persuasive, and the Court finds no error in the RFC.

        a.   <u>The Court finds no error in the evaluation of Dr. Nickerson's opinion.</u>

Plaintiff argues that the ALJ erred in adopting the opinion of non-examining physician, Dr. Nickerson. [Doc. 18] at 8. Even though the ALJ expressly stated that she did not afford controlling weight to the opinion, Tr. 17, Plaintiff argues that she actually did adopt it, [Doc. 18] at 8. The Commissioner disagrees and urges the Court to take the ALJ at her word that she did not adopt Dr. Nickerson's opinion. [Doc. 19] at 7. The Court agrees with the Commissioner that the ALJ did not adopt Dr. Nickerson's opinion. First, as the parties both acknowledge, the ALJ expressly found that Dr. Nickerson's opinion was not afforded controlling weight. Tr. 17. Additionally, the RFC assessment that the ALJ adopted differs from Dr. Nickerson's opinion. *Compare* Tr. 14–15 (ALJ's RFC assessment), *with* Tr. 294–95 (relevant portion of Dr. Nickerson's opinion). Therefore, the Court is not persuaded that there was any error related to the evaluation of Dr. Nickerson's opinion.

        b.   <u>The Court finds no error in the evaluation of Plaintiff's credibility.</u>

Plaintiff argues that the ALJ erred in evaluating his credibility for various reasons. [Doc. 18] at 3, 9–10, 12, 14–15. Defendant responds that Plaintiff is actually asking the Court to reweigh the evidence. [Doc. 19] at 9–12. Defendant is correct. The Court may not reweigh the evidence, as Plaintiff suggests. Moreover, the Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's credibility and that her findings are closely and affirmatively linked to substantial evidence.

The district court cannot re-weigh the evidence and can only review an ALJ's decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs do not have to discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

The Tenth Circuit Court of Appeals does not "reduce[] credibility evaluations to formulaic expressions [nor] require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)). Finally, where pain is the subject of the credibility dispute, the ALJ should consider such factors as:

> [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ, [6] the motivation of and relationship between the claimant and the other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Here, the ALJ adequately evaluated Plaintiff's credibility and sufficiently linked her credibility determination to substantial evidence. Tr. 15–17. The ALJ indicated that she had considered all of Plaintiff's alleged symptoms and then went on to describe those symptoms, including Plaintiff's pain and how the pain allegedly affects him. Tr. 15. Ultimately, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Tr. 15–16. But she also found that his statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC. *Id.* The ALJ then elaborated on these findings. Tr. 15–17.

For example, she explained that "[a]lthough [Plaintiff] continued to report low back pain . . . on December 18, 2009, [he also] reported he going to the gym daily, which was helping" (which corresponds to the fourth *Thompson* factor). Tr. 16. She found that certain, specific medical evidence was not consistent with Plaintiff's reported symptoms (which corresponds to the seventh *Thompson* factor). Tr. 17. Then, she went on to cite to specific evidence that not only was inconsistent with Plaintiff's complaints, but also tended to show that Plaintiff exaggerated his pain (which corresponds to the seventh *Thompson* factor). *Id.* She found that Plaintiff had a history of drug-seeking (which corresponds to the fifth and sixth *Thompson* factors). *Id.* Finally, she found that there was no opinion from a treating source that Plaintiff "is unable to work" (which corresponds to the sixth and seventh *Thompson* factors). *Id.*

Plaintiff takes issue with the ALJ's finding that Plaintiff's reported symptoms are not consistent with the medical evidence. [Doc. 18] at 9–10, 14–15. He argues that the ALJ "made

several misstatements of the record, which render[] the finding unsupported by substantial evidence." [Doc. 18] at 14.  He cites to several specific examples of "ALJ Lindsay's recitation of the evidence" and juxtaposes them with what he believes is the "[c]orrect recitation of the evidence." *Id.*   The Court has thoroughly reviewed these citations and is not persuaded.  *See* [Doc. 18] at 14–15.  The record supports the ALJ's "recitation of the evidence."

For example, Plaintiff takes issue with the ALJ's finding that a "musculoskeletal exam in November 2008 showed . . . . good range of motion with normal flexion and extension and good rotation to both the right and left." [Doc. 18] at 15 (citing Tr. 16 (ALJ's finding)).  However, an emergency room note from November 2008, reflects precisely that finding, nearly verbatim. Tr. 239.  The ALJ's "recitation" of that evidence is clearly accurate; it is substantially—indeed completely—supported.   Nevertheless Plaintiff argues that the "correct recitation of the evidence" was that "[Plaintiff's treating physician,] Dr. Delahoussaye[,] found positive straight leg raise, spinal tenderness, and decreased range of motion, as he had throughout 2011." [Doc. 18] at 15 (citing Tr. 306, 310, 325, 327–29, 335, 338).

Defendant characterizes this argument as an invitation to reweigh the evidence. [Doc. 19] at 9–10.  The Court agrees.  The record *may* support Plaintiff's own evaluation of the evidence, but that is of little consequence.   The standard is not whether evidence supports Plaintiff's preferred findings; the standard is whether substantial evidence supports the ALJ's findings.  *See Lax v. Astrue*, 489 F.3d at 1084 (Courts may not "displace the agency's choice between two fairly conflicting views[.]") (internal quotation marks and alteration omitted).  The

Court has reviewed all of the findings challenged by Plaintiff. *See* [Doc. 18] at 15.  The Court

finds that they are supported by substantial evidence.[5]

Plaintiff also challenges the ALJ's reliance on the presence of "5 of 5 positive Waddell

signs" to find that Plaintiff's subjective complaints are exaggerated and, thus, that he is not

entirely credible.  Tr. 17 (ALJ's finding); [Doc. 18] at 15–16 (Plaintiff's argument).  Plaintiff

argues that Waddell signs do not evidence that his complaints of pain are not genuine but, rather,

indicate that pain is "nonorganic" and that a "detailed psychological assessment" may be

necessary.  [Doc. 18] at 15–16 (citing *Wall v. Astrue*, 561 F.3d 1048, 1056 n.10 (10th Cir 2009)).

Even if Plaintiff were correct that positive Waddell signs cannot evidence exaggeration—which

the Court does not necessarily find—the ALJ's credibility determination would still be supported

by substantial evidence.  For example, in finding that Plaintiff's subjective complaints of pain

were "exaggerated," the ALJ did not rely exclusively on the positive Waddell signs. Tr. 17.  She

also relied on other evidence as well.  *Id.*  Plaintiff does not challenge the other evidence, *see*

[Doc. 18], and it is supported by substantial evidence, Tr. 328 (Dr. Delahoussaye's note that

there was "evidence of exaggerated pain behavior"), 435–36 (Dr. Saiz's note indicating

"[c]learly, we have subjective complaints, which outweigh any objective findings. . . . we have

symptoms that do not make sense at this stage," and that Plaintiff's physical therapist had

reported to the doctor "over exaggerated pain behaviors during physical therapy[.]").

The ALJ's evaluation of Plaintiff's credibility passes muster.  The several credibility

findings are closely and affirmatively linked to substantial evidence, and this Court will not

disturb them.  Remand on this ground is not warranted.

---

[5] Plaintiff challenges the ALJ's finding that a lumbar spine MRI revealed "no impression on the thecal sac at either level."  [Doc. 18] at 15 (quoting Tr. 16 (ALJ's finding)).  The Court finds that it is supported by the September 29, 2009 treatment note from Las Cruces Orthopaedics Associates. Tr. 264.

## II.     Having found no error in the RFC that was adopted, the Court finds no error in the ALJ's failure to discuss the VE testimony about a more restrictive RFC that was not adopted.

Plaintiff argues that the ALJ erred in failing to discuss the VE's response to a hypothetical question involving a sit/stand option. [Doc. 18] at 13 (citing *Vail v. Barnhart*, 84 F. App'x 1, 5–6 (10th Cir. 2003) and citing Tr. 59 (VE's testimony)).   Under *Vail*, ALJs must discuss "all of the significantly probative evidence in a case," including "significantly probative" testimony from a VE.  84 F. App'x at 5.  Here, Plaintiff's argument rests on the contention that the ALJ erred in failing to include a sit/stand option in the RFC.  If Plaintiff were correct and if a sit/stand option were required, then certainly the VE's testimony about such an option would be significantly probative.  However, there is no error in the RFC as found by the ALJ, that is, without a sit/stand option.  Accordingly, the VE's testimony regarding a sit/stand option is not significantly probative, and the ALJ was under no duty to discuss it.

## III.     The ALJ committed reversible error in mechanically applying the grid rules even though Plaintiff had nonexertional limitations.

After finding that Plaintiff was unable to perform any of his past relevant work, the ALJ applied grid rule 202.18 to find Plaintiff not disabled.  Tr. 18.  Plaintiff argues that the ALJ erred in applying the grids because Plaintiff has nonexertional limitations.[6]   [Doc. 18] at 14. Defendant responds that the VE testified that there were certain jobs that Plaintiff could perform despite his nonexertional limitations. [Doc. 19] at 13.  Implicit in Defendant's argument is that the ALJ did not rely exclusively on the grids but actually relied on the VE's testimony.  *See id.*

---

[6] "Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 416.969a(a).  Here, the ALJ found the following nonexertional limitations: "frequently climb[ing] stairs and ramps, balance, stoop, crouch, kneel, and crawl; and only occasionally climb[ing] ladders, ropes, and scaffolds." Tr. 15.

If the VE had so testified, and if the ALJ had relied on that testimony, Defendant would be correct; there would be no error.  But that is not what happened.

At step five, the ALJ does not mention the VE's testimony at all.  Tr. 18.  Instead, she explains that she is applying the grid rules.  *Id.*  She acknowledges that Plaintiff's nonexertional limitations would normally preclude application of the grids.  *Id.*; *see Thompson*, 987 F.2d at 1492 ("[W]here nonexertional impairments are also present [along with exertional impairments], the grids alone cannot be used to determine the claimant's ability to perform alternative work.").  However, she finds that Plaintiff's nonexertional limitations have "very little effect on the occupational base of unskilled light work."  *Id.*  Therefore, she concludes that the grid rules are applicable and that they direct a finding of not disabled.  *Id.*  The problem is that there is not substantial support in the record—indeed, there is no support at all—for the ALJ's determination that Plaintiff's nonexertional limitations had "very little effect on the occupational base of unskilled light work."[7]

The Commissioner is correct that the ALJ heard testimony from a VE, but none of that testimony related to the RFC that the ALJ actually adopted.  *Compare* Tr. 14–15 (RFC that was adopted), with Tr. 58 (first hypothetical), and Tr. 59 (second hypothetical).[8]  Accordingly, the

---

[7] The ALJ indicates that her "conclusion is supported by [Social Security Ruling ("SSR")] 85-15."  Tr. 18. However, SSR 85-15 applies to RFCs consisting of *only* nonexertional limitations.  Of course, here, the ALJ found that Plaintiff has *both* exertional and nonexertional limitations.  So, SSR 85-15 is inapposite, and the Commissioner does not argue otherwise.  *See* [Doc. 19].

[8] Specifically, the hypothetical RFCs posed to the VE were more restrictive than the one ultimately adopted by the ALJ.  For example, the first one posed to the VE included "the option to perform . . . work sitting or standing as necessary" and the need to avoid unprotected heights.  Tr. 58.  Neither of these limitations is included in the RFC ultimately adopted by the ALJ.  Tr. 15.  Additionally, the first hypothetical RFC posed to the VE limited the individual to "occasional" climbing of stairs and ramps, balancing, stooping, crouching, keeling, and crawling. Tr. 58.  But the RFC that was adopted provided for "frequent" performance of these activities.  Tr. 15.  The limitations regarding climbing ladders, ropes, and scaffolds were also different.  The first hypothetical posed to the VE indicated that the individual could "never" perform these activities, Tr. 58, but the RFC that was adopted indicated that the individual could do them "occasionally," Tr. 15.  The second hypothetical posed to the VE was the

12

VE's testimony could not constitute substantial evidence to support the ALJ's determination even if she had purported to rely on it, which she did not.  *See Burns v. Apfel*, No. 97-2323, 1998 U.S. App. LEXIS 11588, at \*4–5 (10th Cir. June 1, 1998) (unpublished) (finding error where the ALJ applied the grids without any testimony from a VE regarding the effects of the plaintiff's nonexertional limitations).  The ALJ erred at step five in mechanically applying the grid rules even though Plaintiff has nonexertional limitations.

### Conclusion

The ALJ committed reversible error in mechanically applying the grid rules where Plaintiff's RFC included nonexertional limitations.  Accordingly, the Motion will be granted, and the case will be remanded.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum [Doc. 18] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

                                      _____

                                      **STEPHAN M. VIDMAR**
                                      **United States Magistrate Judge**
                                      **Presiding by Consent**

---

same as the first but with the added requirement that the individual "get up and move around, so actually . . . walk around for two to three minutes every 15 minutes, so they'd be moving away from the work station[.]  Tr. 59.